## Rockcastle Gas Co. et al. v. Endicott.

(Decided Oct. 10, 1933.)

C. F. SEE, Jr., CHESLEY A. LYCAN and W. R. McCOY for appellants.

J. B. CLARK for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

T. J. Endicott brought this suit against the Rockcastle Gas Company and E. E. Cunningham to recover for his services in obtaining oil and gas leases. The petition alleged in substance that Cunningham, in person, and as agent of the Rockcastle Gas Company, entered into a contract with plaintiff whereby he was to secure certain oil and gas leases on certain property in Martin county, and was to receive for his services $1.25 for each acre so leased; that, pursuant to the contract,

plaintiff did lease to the defendants 751 acres, for which he was to receive $938.75; and that pursuant to the contract the defendants paid him the sum of $200, leaving a balance due of $738.75. The petition also gave the names of the owners and the number of acres leased from each. After filing a demurrer, the defendants filed a joint answer and counterclaim admitting that Cunningham, individually, entered into a contract with the plaintiff to procure oil and gas leases on certain lands, but denying that he acted as agent of the Rockcastle Gas Company, and denying the terms of the contract as stated in the petition. It was further averred that the agreement was that plaintiff was to secure certain oil and gas leases, and was to be paid for his services the sum of $1.25 per acre, only in the event that the title to the leases proved to be good, and that plaintiff did not secure and deliver any leases on properties to which the lessors had title, and that by reason of that fact defendant Cunningham was not liable to plaintiff in any sum. In another paragraph defendant Cunningham asserted a counterclaim against plaintiff for $200, which he averred was paid to plaintiff for leases, the title to which was found not to be good. Plaintiff then filed a reply denying the allegations of the answer and counterclaim. The defendants moved to refer the case to the master commissioner, but no formal order was entered. After hearing the evidence, the master commissioner filed a report finding that the Rockcastle Gas Company was not a party to the transaction, and that no recovery should be adjudged against it. He further found that the whole transaction was of a speculative nature, and that defendant Cunningham knew that the title was defective, but took a chance on making a profit therefrom, and that there was due plaintiff for his services the sum of $738.75. He further found that the counterclaim should be dismissed. Cunningham's exceptions to the master commissioner's report were overruled, and judgment was rendered in accordance with his report.

On the hearing before the commissioner, the evidence is in substance as follows: The contract was made with Cunningham. Endicott obtained the leases, and Cunningham gave him a check for $200. Endicott did not have any agreement that he should be paid only if the titles were good. In the $2 leases Cunningham said, "Be careful about the title." Endicott replied,

" 'When I'm not sure I will just go to your attorney up there,' and I did." The agreement about the leases in question was made at the mouth of Buffalo Horn. Endicott told him how the deeds to the property were made. He further said that the coal had been sold, but the oil was not included, and also told him that six witnesses would swear that the oil and gas were excepted out. Cunningham said, "Go right ahead and take the leases before somebody else gets them." At that time Cunningham knew as much about the title as he did. The leases were on tracts originally known as the Aaron Fluty or old Francis Fluty tracts. The oil and gas did not show up, but he told Cunningham exactly how the deed read. On the other hand, Cunningham testified that he bought the leases for himself and not as agent of the Rockcastle Gas Company. Endicott came to him and told him he could buy some leases on Fluty creek lick and maybe Calf creek, and he told Endicott that, if the titles were good, to go ahead and buy them. Endicott replied that he had talked to Buddy McCoy and the leases were all right. There was nothing said about mineral deeds at the time. Afterward Endicott brought him the leases. He told Endicott that they looked all right, but he could not do anything until he could find out from Mr. McCoy whether the titles were good, and that, if Mr. McCoy wrote him a letter saying the titles were good, he would pay for the leases. At the time he let him have $200 on account. After that he sent the leases to Mr. Billie Rife at Inez, who delivered him a letter from W. R. McCoy reporting that the leases were bad. After receiving this report, he advised Endicott of the fact. He never paid the rentals called for in the leases. W. R. McCoy testified that Endicott came to see him about the old Francis Fluty and Aaron Fluty tracts. They went over to the clerk's office. He told Mr. Endicott that in his opinion the lessors had not obtained a good title to the oil and gas. Endicott claimed that he could prove by several witnesses that only the coal had theretofore been sold, and, as the property had changed hands several times since the deeds were taken, the present owners would be innocent purchasers. Filed with his deposition was a letter in which he gave the opinion that the lessors did not acquire the gas, and there was grave doubt as to whether they did or did not acquire the oil in each of these tracts.

It further appears that on March 19, 1890, Aaron Fluty and his wife conveyed to Arthur D. Bright, trustee, "all the coal, gases, salt water and minerals of every description in, upon and under my farm or tract of land," etc., and that upon December 4, 1899, Francis Fluty and others conveyed to Arthur D. Bright, trustee, "all the coal, gases, salt water and minerals of every description in, upon and under my farm," etc.

It is first insisted that no summons was issued against Cunningham, and that he was not properly before the court, and that the joint answer of the Rockcastle Gas Company and Cunningham did not enter his appearance. As the answer was not filed as the answer of the Rockcastle Gas Company alone, and an alias summons issued against Cunningham, the case of Padgett v. Highland, 3 Ky. Opin. 537, is not in point. Here Cunningham and the Rockcastle Gas Company, without challenging the jurisdiction of the court, not only filed a general demurrer, but filed a joint and separate answer pleading to the merits. This was a general appearance by Cunningham, and he thereby waived the absence of service of process. Brumleve v. Cronan, 176 Ky. 818, 197 S. W. 498; Thomas v. Warford, 1 Bibb, 261.

Another contention is that the action was purely a common-law action, and that no order was entered transferring the case to the equity docket, or referring it to the master commissioner. There can be no doubt that the parties may agree that a common-law action shall be tried as an equitable action. Here the motion to refer the cause to the master commissioner was made by Cunningham and the Rockcastle Gas Company. The case was heard by the master commissioner as if an order had been entered. At that hearing, no objection was made to the evidence introduced by Endicott, and Cunningham appeared with his witnesses and testified on behalf of himself and the Rockcastle Gas Company without questioning the right of the commissioner to hear evidence and report on the case. Nor did he except on the ground that no order of reference had been made. Doubtless the court ordered the transfer, but by inadvertence no formal order was entered, and, as the parties treated the action as properly before the commissioner, appellant Cunningham, who made the motion to transfer, and acquiesced in the hearing by the

commissioner, cannot complain for the first time in this court that no formal order of transfer was made.

The further point is made that the petition is not sufficient to support the judgment, in that it did not allege that Cunningham individually entered into the contract with Endicott. In reply to this argument, it is sufficient to say that Cunningham, though claiming that the contract was different from that stated in the petition, admitted in his answer that he, individually, made the contract with Endicott. That being true, it necessarily follows that the alleged defect in the petition was supplied and cured by the answer. Riggs v. Maltby, 2 Metc. 88; Morgan v. Inter-Southern Life Ins. Co., 221 Ky. 582, 299 S. W. 186.

Coming to the evidence, we find the following situation: Cunningham testified that he was to pay Endicott for his services only in the event that the title to the leases proved to be good, and to this end he submitted the leases to his attorney. On the other hand, Endicott testified that, although he was told to be careful about the titles to the $2 leases, nothing was said about the title to the leases in question. On the contrary, he told Cunningham how the mineral deeds read, and Cunningham said, "Go right ahead and take the leases before somebody else gets them." This Cunningham denies, but he did accept and retain the leases. In view of the sharp conflict in the evidence, and of the fact that leases on particular tracts were to be obtained by Endicott, we cannot say that both the commissioner and the court erred in concluding that Endicott's compensation under the contract was not conditioned on the validity of the titles to the leases which he was employed to obtain.

Judgment affirmed.